# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CASSANDRA K.[1],

Plaintiff,

v.   5:18-CV-86 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 5).

## I.  <u>PROCEDURAL HISTORY</u>

On January 19, 2007, plaintiff filed for Title XVI Supplemental Security Income ("SSI") benefits, alleging disability beginning on January 1, 2007 due to a joint problem, an arm problem, asthma, learning problems and an emotional problem. (Administrative Transcript ("T.") at 34, 38).  Her claim was denied (*id.*), and after a

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

hearing (T. 743-67), Administrative Law Judge ("ALJ") Thomas Tielens issued an unfavorable decision dated September 3, 2009 (T. 665-672). The Appeals Council denied review (T. 673), and plaintiff filed suit in the U.S. District Court for the Northern District of New York. On March 2, 2011, the court remanded the case for further administrative consideration. (T. 677-708; Case No. 5:09-CV-1359 (GLS/VEB), Dkt. Nos. 20-22).

The Appeals Council remanded the case to ALJ Tielens (T. 711), and, after a second hearing (T. 622-61), ALJ Tielens issued a second unfavorable decision dated June 29, 2011 (T. 715-30). The Appeals Council assumed jurisdiction and remanded the case on July 16, 2013. (T. 739-41). The case was assigned to ALJ F. Patrick Flanagan who, after a hearing (T. 579-621), issued a third unfavorable decision dated March 17, 2014 (T. 1106-27). The Appeals Council denied review (T. 1136-39), and plaintiff again filed suit in the Northern District of New York. On May 4, 2016, the court remanded the case, this time with the consent of the Commissioner. (T. 1142, 1144-45; Case No. 5:15-CV-1144 (MAD/DJS), Dkt. Nos. 12-15).

On September 6, 2016, the Appeals Council remanded the case to ALJ John P. Ramos. (T. 1148-50). Plaintiff attended hearings before ALJ Ramos on April 13, 2017 and September 21, 2017, and a Vocational Expert ("VE") testified at the latter hearing. (T. 1074-1102). The ALJ issued a fourth unfavorable decision dated November 14, 2017. (T. 1045-62). Plaintiff bypassed written exceptions, and the Appeals Council did not assume jurisdiction within sixty days, making the ALJ Ramos's unfavorable decision the final decision of the Commissioner. 20 C.F.R. §416.1484(c)-(d).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations.  If the claimant has such an impairment, the
> [Commissioner ] will consider him disabled without considering
> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

Plaintiff was twenty years old on the alleged onset date, and thirty years old on the date of the most recent ALJ decision. (T. 1060). She had a high school education, with special education classes. (T. 308, 1360). She resided with her mother, her boyfriend, and a daughter, who was eleven years old at the time of the September 2017 hearing. (T. 1090). Plaintiff's employment experience was so limited that the ALJ determined that she had no "prior relevant work." (T. 1060, 1093-94).

Plaintiff underwent left shoulder surgery in 2002, 2004, and February 2007 because her shoulder became unstable and would frequently pop out of joint. (T. 313, 443). Her orthopedic surgeon, Dr. Scerpella, noted in September 2007 that, although the plaintiff did "relatively well initially" following surgery, "her shoulder gradually stretches out and becomes again unstable and painful." (T. 903). Following an

examination of plaintiff, Dr. Scerpella prepared a functional capacity report on December 23, 2008, finding, inter alia, that plaintiff could occasionally lift and carry up to ten pounds and could not sit comfortably for more than thirty minutes at a time. (T. 506). Dr. Scerpella also found that plaintiff had "very limited" fine manipulation and grasping in her left hand because of numbness and tingling in her hand. (T. 507, 897).

As the Appeals Council noted, "later examination findings suggest that [plaintiff's] condition may have deteriorated . . ." and she "was subsequently diagnosed with Ehlers-Danlos syndrome,[2] carpal tunnel syndrome, fibromyalgia, cervicalgia and spasmodic torticollis."[3] (T. 1148). Plaintiff underwent a right endoscopic carpal tunnel release surgery on February 7, 2014. (T. 1609-10). An EMG dated April 8, 2015 revealed demyelinating left median mononeuropathy at the left wrist, affecting both sensory and motor fibers and consistent with moderate left carpal tunnel syndrome. (T. 1510-11). Although carpal tunnel surgery on plaintiff's left upper extremity was recommended by June 2015 (T. 1591-92), she had not undergone the operation as of the September 2017 hearing, due to anxiety over further surgery (T. 1088-89).

A non-examining medical expert, Dr. Gussoff, prepared a medical source

---

[2] "Ehlers-Danlos syndrome is a group of disorders that affect connective tissues supporting the skin, bones, blood vessels, and many other organs and tissues. Defects in connective tissues cause the signs and symptoms of these conditions, which range from mildly loose joints to life-threatening complications." https://ghr.nlm.nih.gov/condition/ehlers-danlos-syndrome .

[3] "Torticollis (wry neck, or loxia) is one of a broader category of disorders that exhibit flexion, extension, or twisting of muscles of the neck beyond their normal position." https://www.emedicinehealth.com/torticollis/article_em.htm .

statement and answered medical interrogatories on May 31, 2017. Dr. Gussoff opined that plaintiff could frequently lift and carry up to ten pounds, but never more than that. (T. 1570). Dr. Gussoff found that plaintiff could sit for five hours in an eight-hour day (one hour at a time), and stand or walk three hours in an eight-hour day (thirty minutes at a time). (T. 1571). Dr. Gussoff further opined that plaintiff could never reach, handle, finger, push or pull with her left hand (T. 1572), and noted that plaintiff had "full mobility of extremities except total restriction of mobility of [the left] shoulder. AVOID overhead reaching and carrying." (T. 1579) (emphasis in original).[4] Dr. Gussoff found, based on his review of the medical records, that plaintiff had these various limitations since December 9, 2004. (T. 1575).

The plaintiff's brief (at 3-12, Dkt. No. 11) and the ALJ's decision (T. 1048-51, 1053-60) provide detailed statements of the relevant medical and other evidence of record. Rather than reciting this evidence at the outset, the court will discuss the pertinent details below, as necessary to address the issues raised by plaintiff.

## IV. THE MOST RECENT ALJ'S DECISION

ALJ Ramos first found that plaintiff had not engaged in substantial gainful activity since her application date of January 19, 2007. (T. 34, 1048). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: "left shoulder impairment status post multiple surgeries, asthma, Ehlers-Danlos syndrome, fibromyalgia, cervicalgia, mild degenerative disc disease in

---

[4] Elsewhere in his reports, Dr. Gussoff stated that plaintiff had "full mobility of all extremities except chronic pain and **moderate** restriction and mobility of [the left] shoulder." (T. 1578) (emphasis supplied).

the lumbar spine, morbid obesity, spasmodic torticollis, and adjustment disorder with mixed features." (T. 1048-49). He found that plaintiff's learning disability (average intelligence), kidney stones, history of mild carpal tunnel syndrome, a sore throat, and a cat bite were not severe. (T. 1049-50). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P, including Listing 1.02 for major dysfunction of a joint. (T. 1050-52).

The ALJ next found that plaintiff retained the residual functional capacity ("RFC") to perform a range of limited, unskilled, sedentary work, as follows:

> . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) **except the claimant is able to sit for up to five hours in an eight-hour day at one-hour intervals**, stand for up to three hours in an eight-hour day at 30-minute intervals, and walk for up to three hours in an eight-hour day at 30-minute intervals. The claimant is able to frequently reach overhead and in all other directions, frequently push and pull with her right upper extremity, and frequently handle, finger, and feel with her right dominant hand and upper extremity. **The claimant cannot reach overhead and is able to occasionally reach in all other directions and handle small objects with her left arm, and frequently handle, finger, and feel with her left hand.** The claimant is able to occasionally operate foot controls with either foot. She should not climb ladders or scaffolds and is able to occasionally climb stairs and ramps. The claimant is able to occasionally balance, but should not stoop, kneel, crouch, and crawl as those terms are defined in the Dictionary of Occupational Titles. The claimant is not able to work at unprotected heights and is able to occasionally work with moving mechanical parts or operate a motor vehicle. The claimant should not be exposed to humidity and wetness, dust, odors, fumes, or pulmonary irritants and extreme temperatures or vibrations. The claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine, maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks, handle reasonable levels of simple work-related stress in that she can make

decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

(T. 1052-60) (emphasis added). In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence. (T. 1053). The ALJ stated that he considered opinion evidence, affording, inter alia, "little evidentiary weight" to the 2008 opinion of treating physician, Dr. Scerpella and "partial weight" to the 2017 opinion of Dr. Gussoff, while rejecting this medical expert's opinion that plaintiff had no use of her left arm. (T. 1053, 1057-58).

As noted above, the ALJ determined that plaintiff had no past relevant work. (T. 1060). However, he also found that "considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 1060). The ALJ referenced the supporting testimony of the VE (T. 1061), but did not acknowledge that the VE also testified that, if plaintiff could not reach, handle, finger, feel, push, or pull with her left hand and upper extremity, she would, in light of her other postural limitations, be unable to perform any work (T. 1095-96). Ultimately, based on his less-limiting RFC findings, the ALJ determined that plaintiff was not disabled from the application date of January 19, 2007 through the date of the ALJ's decision. (T. 1061).

## V.   ISSUES IN CONTENTION

Plaintiff argues that the ALJ failed to assess appropriately the opinions of plaintiff's treating orthopedist, Dr. Scerpella, and the medical expert, Dr. Gussoff, resulting in an RFC finding that was unsupported by substantial evidence and was based upon a misapplication of pertinent VE testimony.  (Pl.'s Br. at 1).  In particular, plaintiff contends that the ALJ should have given greater weight to Dr. Scerpella's opinion that plaintiff was very limited in conducting fine manipulation and grasping with her left hand (*id*. at 15-17) and the opinion of Dr. Gussoff that plaintiff could never reach, handle, finger, push, or pull with her left hand (*id*. at 17-18).  Plaintiff also argues that plaintiff's acknowledged limitation on sitting, for only five hours in an eight-hour day, was inconsistent with the performance of sedentary work.  (*Id*. at 18).  Because the VE's opinion about plaintiff's ability to perform other work was based on an erroneous RFC, plaintiff contends that the ALJ's ultimate determination that plaintiff was not disabled is not supported by substantial evidence.  (*Id*. at 18-19).  Defendant argues that the ALJ properly evaluated conflicting medical evidence, that he articulated good reasons for rejecting the opinions of Dr. Scerpella and Dr. Gussoff regarding plaintiff's left-hand limitations, and that the ALJ's RFC findings were supported by substantial evidence.  (Def.'s Br. at 3-4, 7-13, Dkt. No. 12).

For the following reasons, the court concludes that the ALJ improperly substituted his own lay judgment for competent medical opinion evidence.  The ALJ's RFC findings with respect to plaintiff's ability to use her left hand were not supported by substantial evidence, and the ALJ relied on VE testimony that was based on a flawed

RFC, tainting the ultimate determination that plaintiff was not disabled. Accordingly, the court orders yet another remand for further administrative proceedings, but not solely for the determination of benefits, because it is not clear on the current record that plaintiff is entitled to a finding that she was disabled. On remand, the Commissioner should consider obtaining additional medical/opinion evidence and/or seeking clarification of the existing opinion evidence; should properly assess all of the medical opinion and other evidence in assessing plaintiff's RFC; and should make a determination, supported by substantial evidence, as to whether plaintiff was disabled for some or all of the extensive time period between the date of her original application and the date of the decision on remand.

## DISCUSSION

### VI.   RFC EVALUATION/TREATING PHYSICIAN

####    A.    Legal Standards

#####    1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

As noted, the ALJ found that plaintiff had the RFC to perform sedentary work, with additional restrictions. The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3. "Most unskilled sedentary jobs require

good use of both hands and the fingers; i.e., bilateral manual dexterity." SSR 96-9p, 1996 WL 374185, at *8.

## 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. A well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may also provide substantial evidence supporting an ALJ's decision. *See, e.g., Leach v. Barnhart*, No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").[5] An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B. Application

The ALJ gave "little evidentiary weight" to the December 2008 opinion of Dr.

---

[5] *See also Michels v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (finding that opinion of State agency physician provided substantial evidence to support ALJ's RFC finding).

Scerpella stating, in pertinent part[6]:

> As for her opinion regarding the claimant's functional limitations, this is given little weight because it is not supported by the clinical findings. As noted above, during an exam in August 2008, the claimant had full range of motion of her neck and shoulders, no strength deficits, and normal sensation (Exhibit 28F, p. 18 [T. 486]). In May 2009, the claimant had limited range of motion of the left shoulder, but all other clinical findings were normal (Exhibit 24F, p. 1 [T. 390]). Moreover, the claimant [had] stopped using narcotic pain medications and all other medications during her pregnancy.

(T. 1057).

The ALJ's mischaracterizes some of the evidence he cites in support of his RFC analysis[7] and ignores contradictory medical evidence in the record, which provided considerable support for Dr. Scerpella's opinion that plaintiff had "very limited" fine manipulation and grasping with her left hand.[8] (T. 507). The August 2008 treatment note referenced by the ALJ reflected a brief examination before plaintiff was given a ganglion injection, and the note made no reference to the functionality of plaintiff's left hand. (T. 486). Plaintiff gave birth in 2005 (T. 309)–three years before Dr. Scerpella's opinion–and the fact that plaintiff stopped using narcotic pain medications to protect

---

[6] Dr. Scerpella also provided an opinion that plaintiff would be totally disabled for at least one year after her 2007 surgery (T. 290), which the ALJ correctly noted was an opinion on the ultimate issue of disability, which is reserved to the Commissioner (T. 1057). *See* SSR 96-5p, 1996 WL 374183, at *2.

[7] *See, e.g., Richardson v. Barnhart*, 443 F. Supp. 2d 411, 421 (W.D.N.Y. 2006) (the ALJ's mischaracterization of the record "is indicative that his analysis is not based upon substantial evidence").

[8] As noted above, an ALJ cannot "cherry pick" only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence. *See, e.g., Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (collecting cases) (Rep't-Rec.), adopted, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

her fetus does not constitute significant evidence that her symptoms had improved. A physical therapy evaluation in April 2007 reported that plaintiff had numbness in her left arm and fingers (T. 342), and an evaluation from a different physical therapist in October 3, 2007 noted that plaintiff reported "intermittent tingling in the left forearm and hand when she has been using her arm" (T. 894).

Dr. Scerpella's December 2008 medical source opinion followed several examinations of plaintiff, with documentation of objective medical evidence of symptoms related to the functionality of her left hand. On September 19, 2008, Dr. Scerpella noted that plaintiff had not fared well following her third surgery on her left shoulder. Periodic stellite ganglion injections provided relief for only a day, and plaintiff's extensive pain medication, including OxyContin and Oxycodone made her feel "druggy." Given plaintiff's chronic pain and recurrent laxity in her left shoulder, Dr. Scerpella stated that plaintiff was "in a very bad situation" "with "limited options." (T. 898). On December 23, 2008, Dr. Scerpella observed that plaintiff was also "symptomatic in that the numbness and tingling in her left hand affect her ability to grasp and do fine manipulation." The doctor concluded that "the radicular upper extremity symptoms are due to the instability about the shoulder" and discussed with plaintiff the possibility of a fourth shoulder operation. (T. 897).

The May 2009 medical progress notes referenced by the ALJ found that plaintiff "shows normal strength of her hand intrinsic muscles as well as her wrist flexion and extension." However, the ALJ does not mention that the same medical record also noted that plaintiff "most recently has been experiencing some numbness and pain on

her left hand especially when she is holding a book and she has occasionally experienced some nocturnal symptoms manifested as numbness on her left hand" which the doctor stated was possibly related to median nerve irritation and very mild carpal tunnel syndrome. (T. 390). The ALJ acknowledged, elsewhere in his decision, that plaintiff displayed worsening carpal tunnel syndrome between 2011 and 2015, during which time period surgery was performed on her right hand and recommended for her left hand based on "a history of pain and numbness in her left hand" and an abnormal EMG study of her left upper extremity in April 2015. (T. 1050, citing, inter alia, T. 939, 1510-11, 1591-92 1602-03). The ALJ nonetheless found plaintiff's carpal tunnel syndrome not to be "severe." (T. 1050).

As noted above, Dr. Gussoff opined that, since December 2004, plaintiff could never reach, handle, finger, push or pull with her left hand, which was largely consistent with Dr. Scerpella's opinion regarding the "very limited" functionality of plaintiff's left hand. The ALJ rejected Dr. Gussoff's opinion "that plaintiff has no use of her left arm . . . because the clinical findings suggest that the claimant retains some use of her left arm, but has limitations for reaching." In supporting this position, the ALJ emphasized that, during the September 2017 hearing, the plaintiff, "without prompting . . . picked up her pill bottle and held it up with her left hand." (T. 1058, 1089-90, 1091-92). The fact that plaintiff could grasp and lift a pill bottle with her left hand hardly provides significant evidence supporting an RFC that plaintiff could "frequently handle, finger, and feel with her left hand" during the course of an eight-hour workday (T. 1052). *See, e.g., Kelsey O. v. Comm'r of Soc. Sec.*, No. 3:17-CV-525

16

(ATB), 2018 WL 3193197, at *6 (N.D.N.Y. June 28, 2018) (plaintiff's ability to perform certain activities outside the house is a very weak basis for the ALJ's rejection of the treating source opinion, because all of the activities described were performed at a rate other than eight hours a day, five days a week).   Similarly, the ALJ pointed to a fleeting reference in a single medical record that plaintiff was carrying laundry in 2014 as evidence of the functionality of her left hand, neglecting to mention that the same record reflects that she complained to her primary care doctor that her effort to carry laundry caused her radiating back pain.  (T. 1058, 1656).  *See, e.g., Stoesser v. Comm'r of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (claimant's daily activities–including household chores–did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday) (Rep't-Rec.), *adopted*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011).

The ALJ pointed to more recent medical evidence in an attempt to support his rejection of the opinions of Dr. Scerpella, and the medical expert Dr. Gussoff regarding the functional limitations of plaintiff's left upper extremity.  (T. 1050, 1055, 1058 citing, inter alia, Ex. 47F, pp. 6 (T. 1474); Ex. 54F, pp. 3-4, 8 (T. 1616-17, 1621-22)). The ALJ noted that plaintiff's pain management providers found, in February, May, and/or June 2017, that plaintiff retained normal sensation and full motor strength in her upper extremities, full grip strength, and/or full range of motion for both wrists.  (*Id.*). However, these medical records also indicated that plaintiff was suffering from chronic neck pain, which fluctuated in severity from between five to eight on a scale of ten, and which was originally diagnosed as neuropathic, but was classified in June 2017 as

"predominantly myofascial" based on Dr. Vella's thorough review of an MRI. (T. 1472, 1614-15, 1617, 1620, 1622). Plaintiff was diagnosed with, inter alia, active Ehlers-Danlos syndrome, fibromyalgia, carpal tunnel syndrome, left arm weakness, and numbness. (T. 1472-73, 1615, 1620). The pain management records noted that plaintiff suffered from symptoms including limited range of motion with increased pain from motion; limb pain; and bilateral muscle spasms of the trapezius muscle. (T. 1474, 1614, 1616, 1621).

ALJ Ramos did not order a more recent physical examination of plaintiff by a consulting physician, even though the 2007 report of the internal medical examiner, Dr, Ganesh, could not address the functionality of plaintiff's left upper extremity because she was still in a sling, recovering from recent surgery on her left shoulder.[9] (T. 313, 315). Instead, the ALJ relied upon his own lay interpretation of plaintiff's medical examinations and other clinical data, and improperly substituted his judgment for that of plaintiff's treating orthopedist, and the medical consultant who had reviewed plaintiff's medical records.[10] *See, e.g., Filocomo v. Chater*, 944 F. Supp. 165, 170

---

[9] Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1).

[10] If the ALJ determined that the most recent medical evidence, that was not available to Dr. Gussoff by the time of the medical expert's May 31, 2017 reports, was highly probative in the ALJ's evaluation of Dr. Gussoff's opinion, the ALJ could have asked the medical expert to consider the additional medical records and, if appropriate, amend his reports. In any event, the June 2017 treatment notes of plaintiff's pain management doctor reflected diagnoses and medical observations that were consistent with those from earlier examinations.

(E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."); *Felder v. Astrue*, 10-CV-5747, 2012 WL 3993594, at *11-13 (E.D.N.Y. Sept. 11, 2012) ("an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error").

Because "[e]valuating [plaintiff's] ability to use [her] hands is crucial to determining whether [s]he could have performed sedentary work[,]" the ALJ's errors in considering the opinion and other medical evidence regarding the functionality of plaintiff's left hand in his RFC analysis cannot be deemed harmless. *Mason v. Barnhart*, 96 F. App'x 30, 31-32 (2d Cir. 2004). Because the VE testified that plaintiff could not perform competitive work if she was unable to reach, handle, finger, feel, push, or pull with her left hand and upper extremity, the ALJ's ultimate determination that plaintiff was not disabled is tainted by his flawed RFC findings, and remand is required. *See, e.g., Ellis v. Colvin*, 29 F. Supp. 3d 288, 300-02 (W.D.N.Y. 2014) (because "Plaintiff's non-exertional limitations with regard to her use of her hands completely eroded the occupational base for sedentary jobs that the VE testified that she could perform[,]" the ALJ's erroneous "failure to incorporate a restriction on repetitive hand movements into his RFC assessment" required remand).[11]

---

[11] The court need not address the plaintiff's argument that the ALJ's non-disability finding is not supported by substantial evidence because she could only sit for five hours during the workday, in light of the fact that this case must be remanded on other grounds. However, as defense counsel notes, although the ability to sit for at least six hours in a workday is required to perform the full range of sedentary work, the ALJ included, in his RFC, the more restrictive limitation that plaintiff could only sit for a total of five hours. Because the ALJ included the

## VII. NATURE OF REMAND

### A. Legal Standards

Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose. *Id.*

### B. Application

In this case, the ALJ erred in his evaluation of the opinion and other medical evidence in making his RFC findings, and his ultimate determination that plaintiff was not disabled was not supported by substantial evidence. However, it is not clear, on the current record, whether the Commissioner could determine an RFC supported by substantial evidence that would allow a VE to identify jobs that plaintiff could perform. Depending on updated medical opinion evidence that could be considered on remand, an ALJ might be able to make a supported RFC finding with respect to the functionality of plaintiff's left hand that would not preclude her from all competitive work. Even the "loss, or the loss of the use, of an arm or hand is not disabling per se." *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *13 (N.D.N.Y. Feb. 13, 2009) (collecting cases); *Faust v. Astrue*, No. 06 CIV. 4577, 2011 WL 7145740, at *12-

---

more restrictive limitation on sitting in the hypothetical to the VE during the hearing, and the VE found that the plaintiff could still perform particular sedentary jobs, remand on the basis of plaintiff's limited capacity for prolonged sitting would not be warranted. (See Def.'s Br. at 13).

13 (S.D.N.Y. Mar. 15, 2011) (Rep't Rec.), *adopted*, 2012 WL 382959 (S.D.N.Y. Feb. 6, 2012) (with the loss of an upper extremity, a VE may be able to determine the size of the remaining occupational base and cite specific jobs within the individual's RFC) (citing SSR 83-12, 1983 WL 31253, at *4).  In the absence of persuasive proof of disability, the court will not remand this case solely for the calculation of benefits, notwithstanding the fact that the Commissioner has, over the past ten years, made numerous unsuccessful attempts to adjudicate plaintiff's claim without fatal error.

On remand, the Commissioner should properly address the totality of the medical opinion and other evidence regarding plaintiff's functional limitations, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination.  As appropriate, the ALJ should order further consultative examinations of plaintiff, and/or further use of a medical consultant to clarify or revise opinions based on the updated medical evidence. Further, given the extensive passage of time between the date of plaintiff's original application and any decision on remand, the Commissioner should evaluate whether there has been a substantial change over time in plaintiff's limitations or symptoms, such that a finding of disability for some closed period should be considered.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with

this Memorandum-Decision and Order.

Dated:       March 11, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge